

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON GRAND JURY 2007-01
AUGUST 5, 2008 SESSION

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

UNITED STATES OF AMERICA

v.

CRIMINAL NO. 10:08-cr-00172

18 U.S.C. § 1341
18 U.S.C. § 666(a)(1)(A)
18 U.S.C. § 1956(h)
18 U.S.C. § 1957
18 U.S.C. § 2(b)

HEIDI C. LAUGHERY,
     also known as,
     "Heidi Ditchendorf" and
     "Heidi Caroline"
JAMES LARRY HYMER,
R. SCOTT TRUSLOW,
MENTORGEN, LLC,

# I N D I C T M E N T

The Grand Jury charges:

## COUNTS ONE THROUGH FIVE
### (Mail Fraud)

### BACKGROUND

At all relevant times:

1.    The United States Department of Agriculture ("USDA") was a federal government agency responsible for, among other things, promoting economic development programs relating to food, agriculture, and natural resources.  To further its mission, the USDA implemented programs and provided financing to help improve utilities and infrastructure in rural America.

2.   The Rural Utilities Service ("RUS"), also known as the Rural Utilities Division, was an office within the USDA responsible for, among other things, the administration of broadband telecommunication loan programs.   The purpose of these RUS broadband loan programs was to encourage telecommunications companies to provide broadband service to rural areas so that rural residents could have access to the same quality and range of telecommunication services that were available in urban and suburban communities.   The RUS broadband loan programs provided loan funds to communities with populations of 20,000 and fewer inhabitants.   The RUS broadband loans could only be used for specified purposes, such as, the construction and operation of facilities to furnish or improve broadband service in designated rural areas.

3.   The Mid-Ohio Valley Regional Council ("MOVRC") was an economic planning and development agency serving several west-central West Virginia counties, including Jackson and Wood Counties.   The MOVRC's mission included, among other things, facilitating, coordinating and administrating federal assistance for economic planning and development of the infrastructure for the communities it served.   To this end, the MOVRC provided financing to qualified borrowers that could be used to meet eligibility and funding pre-requisites for federal and state loans, including RUS broadband loans.   Additionally, the MOVRC was tasked with

2

administering federal and state loan and grant monies for approved projects.

4.    The West Virginia Development Office ("WVDO") was a West Virginia state agency responsible for economic and community development throughout the state.  One of the primary goals of the WVDO was to improve the quality of life of all West Virginians by expanding the state's economy and creating jobs.  The WVDO offered a variety of state and federal loan and grant programs to fund its economic development projects, including federal Small Cities Block Grants.  The WVDO provided financing to qualified borrowers that could be used by the borrowers to meet funding pre-requisites for federal and state loans, including RUS broadband loans.

5.  The West Virginia Economic Development Authority ("WVEDA") was a West Virginia state government instrumentality responsible for developing and promoting the business and economic welfare of the state of West Virginia.  To accomplish this purpose, the WVEDA was empowered to, among other things, guarantee loans and furnish credit for the purpose of supporting business development projects.

6.    United Bank was a financial institution within the meaning of 18 U.S.C. § 1956 and 31 U.S.C. § 5312, which was engaged in, and whose activities affected, interstate commerce.  United Bank maintained offices in West Virginia and several other states.

3

## DEFENDANTS AND UNCHARGED BUSINESS ENTITIES

**A.    Defendant Heidi C. Laughery and Sequelle Communications Alliance, Inc.**

7.  Sequelle, Inc. was a non-profit entity formed in or about August 2000.   Sequelle, Inc. was based in Marietta, Ohio. The stated purpose of this non-profit entity was to provide wireless broadband to Ohio residents.  Defendant HEIDI C. LAUGHERY served as President and Chief Executive Officer of Sequelle, Inc. from in or about August 2000 through September 2001.

8.  Sequelle Communications Alliance, Inc. ("Sequelle") was a for-profit West Virginian business incorporated in or about September 2001 and whose principal office was, at first, based in Marietta, Ohio, and then later, based in Parkersburg, West Virginia.   Sequelle's purported primary business purpose was to provide cost-effective, high-speed broadband access to businesses, educational institutions and consumers in under-served, west-central West Virginia and eastern Ohio rural areas.

9.   Defendant HEIDI C. LAUGHERY, was the principal founding member of Sequelle and served as its President and Chief Executive Officer from in or about September 2001 until in or about March 2005.

**B.  Defendants Heidi C. Laughery and MentorGen, LLC**

10.   Co-defendant MENTORGEN, LLC, ("MENTORGEN"), charged in Count Eight of this Indictment but not in Counts One through Five or Counts Nine through Twelve, was an Ohio corporation formed in

4

late 2000 and whose principal office was based in Worthington, Ohio, a suburb of Columbus, Ohio.  Defendant MENTORGEN was a start-up telecommunications software development company and served as a vendor and the primary contractor to Sequelle.

11.   In 2003 and 2004, Sequelle was defendant MENTORGEN's principal client and primary source of income.

12.   Defendant HEIDI C. LAUGHERY was the Chief Executive Officer of defendant MENTORGEN from in or about December 2004 through mid-2006.

C.  **Defendants James Larry Hymer and MentorGen, LLC**

13.   Defendant JAMES LARRY HYMER, charged in Count Eight of this Indictment, but not in Counts One through Five or Counts Nine through Twelve, was a founding partner and, at all relevant times, the Chief Financial Officer of defendant MENTORGEN.   As the company's Chief Financial Officer, defendant JAMES LARRY HYMER was responsible for, among other things, managing the company's financial books and records, paying bills and preparing invoices.

D.   **Defendant R. Scott Truslow and Truscom, LLC**

14.   Defendant R. SCOTT TRUSLOW, charged in Count Eight of this Indictment, but not in Counts One through Five or Counts Nine through Twelve, was the founder and sole member of Truscom, LLC ("Truscom").  Truscom was an Ohio limited liability company formed in or about November 2002 and whose office was based in Columbus, Ohio.   Truscom served as the business entity that offered the

5

engineering services of defendant R. SCOTT TRUSLOW on a contract basis to Sequelle.

15.   Sequelle was Truscom's sole client.

16.   In or about late 2004, defendant R. SCOTT TRUSLOW became the Chief Operations Officer of defendant MENTORGEN.

### THE SCHEME TO DEFRAUD

17.   From in or about the spring of 2002 and continuing through September 2004, at or near Parkersburg, Wood County, West Virginia, within the Southern District of West Virginia and elsewhere, defendant HEIDI C. LAUGHERY knowingly devised and intended to devise a scheme and artifice to defraud the USDA, the RUS, the states of West Virginia and Ohio, United Bank, and Sequelle, and to obtain money and property therefrom by means of materially false and fraudulent pretenses, representations and promises ("the scheme").

### MANNER AND MEANS OF FURTHERING THE SCHEME

**A.   The $3.295 Million RUS Broadband Loan**

18.   It was a part of this scheme that in or about September 2001, and then again in February 2002, defendant HEIDI C. LAUGHERY, acting in her capacity as President and Chief Executive Officer of Sequelle, completed applications for an RUS broadband loan seeking more than $3.0 million in federal loan funds.

6

19.  It was further a part of the scheme that defendant HEIDI C. LAUGHERY estimated on the RUS loan applications that Sequelle would have approximately $2.0 million available from non-RUS sources to supplement the RUS loan funds.   Defendant HEIDI C. LAUGHERY knew the RUS, as a pre-condition to disbursement of loan funds, required her to obtain substantial funding from other sources to be used to support business activities that could not be supported with RUS monies, including: payment of salaries; office space, utilities and supplies; marketing and sales expenses; and legal expenses.

20.   It was further a part of this scheme that on or about March 4, 2002, defendant HEIDI C. LAUGHERY, acting in her capacity of President and Chief Executive Officer of Sequelle, entered into a $3.295 million broadband loan agreement with the RUS.   The terms of the agreement included:

a.    a commitment that the loan funds "...be used solely for the project specifically described in the Application to furnish or improve broadband services in rural areas...in the States of Ohio and West Virginia";

b.    a commitment that the loan proceeds "...not be expended for any non-Approved Purposes"; and

c.    a condition that RUS was under "no obligation to advance any portion of the Loan unless and until the Borrower has submitted evidence that no material adverse change on

the...financial condition...has occurred which could have a material adverse effect on the Borrower's abilities to meet its obligations under this Agreement."

**B.    Defendant Heidi C. Laughery's Applications for Non-RUS Supplemental Funding**

21.    It was further part of the scheme that, from in or about the spring of 2002 to early 2003, defendant HEIDI C. LAUGHERY, in an effort to satisfy the RUS supplemental funding requirements, sought funding from non-RUS sources for Sequelle, including: the MOVRC, the states of West Virginia and Ohio and United Bank.

22.    It was further part of the scheme that in her applications for non-RUS funding, defendant HEIDI C. LAUGHERY would and did:

a.    in or about April 2002, complete an application with the Ohio Department of Development seeking a state grant for Sequelle. In connection with this application, defendant HEIDI C. LAUGHERY represented that within three years' time Sequelle would create forty new jobs. She claimed the employees "will enjoy high wages" and "good benefits packages."   In this application, defendant HEIDI C. LAUGHERY, acting in the capacity of President of Sequelle, falsely certified that no officer of Sequelle had ever been convicted of a felony; she also falsely certified on this same application that no officer of Sequelle had ever been a defendant in a criminal action;

8

b.   in or about June 2002, cause the Wood County Commission (Wood County, West Virginia) to apply for a $600,000 Small Cities Block Grant from the WVDO for Sequelle.  In connection with the grant application, defendant HEIDI C. LAUGHERY caused the Wood County Commission to represent to the WVDO that: within three years' time, the grant monies to Sequelle would result in the creation of forty-five, full-time technology jobs paying an annual average salary, excluding benefits, of at least $45,000;

c.   in or about November 2002, complete an application with the MOVRC requesting a loan in the amount of $95,000.  In connection with this application, defendant HEIDI C. LAUGHERY represented to the MOVRC that within three years' time, Sequelle would create or preserve forty-five jobs.  In this application, defendant HEIDI C. LAUGHERY, acting in the capacity of President and Chief Executive Officer of Sequelle, falsely certified that no officer of Sequelle had ever been convicted of a criminal offense. Defendant HEIDI C. LAUGHERY also falsely certified on this same application that no officer of Sequelle had ever been involved in bankruptcy proceedings.  The MOVRC later approved this loan request, and after combining this loan with prior existing debts of Sequelle, issued a new loan in the amount of $160,000; and

      d.    in or about January 2003, complete an application with United Bank requesting a loan in the amount of $340,000. In this application, defendant HEIDI C. LAUGHERY failed to disclose to United Bank that within the last ten years she, as a personal guarantor of the loan, had been declared bankrupt.

23. It was further part of the scheme that defendant HEIDI C. LAUGHERY made the afore-referenced false certifications:

      a.    notwithstanding the fact that in 1987 she was convicted in federal court in San Francisco, California of two felony wire fraud offenses in violation of 18 U.S.C. § 1343. These convictions arose from defendant's misapplication and embezzlement of more than $130,000 of customer funds and securities during her employment at Merrill Lynch as a financial consultant and broker. Defendant HEIDI C. LAUGHERY accomplished her crimes, in part, by creating fictitious accounts for the purpose of laundering and disguising transfers of stock or cash; and

      b.    notwithstanding the fact that in April 2001 she filed for bankruptcy in the state of Ohio.

      C.    **False Invoicing Scheme**

24. It was further part of the scheme that in 2003, defendant HEIDI C. LAUGHERY, acting in her capacity as Sequelle's President and Chief Executive Officer, obtained all necessary non-RUS

funding, including: a $600,000 grant from the state of West Virginia, and administered by, the MOVRC; a $340,000 loan from United Bank; and a $160,000 note from the MOVRC.

25. It was further a part of this scheme that, after defendant HEIDI C. LAUGHERY obtained the necessary non-RUS funding, the RUS permitted defendant to draw on the $3.295 million in loan funds.

26. It was further part of the scheme that defendant HEIDI C. LAUGHERY would and did cause Sequelle to hire defendant MENTORGEN as, at first, a software vendor, and later, as Sequelle's primary engineering contractor.

27. It was further part of the scheme that defendant HEIDI C. LAUGHERY would and did cause Sequelle to hire defendant R. SCOTT TRUSLOW, through his business Truscom, LLC, for the purpose of providing engineering services to Sequelle.

28. It was further a part of this scheme that beginning in or about June 2003 and continuing through in or about December 2004, defendant HEIDI C. LAUGHERY, would and did:

    a.    submit and cause to be submitted false certifications and fraudulent invoices to the RUS which falsely represented that contractor and vendor services had been provided when they had not;

11

b.    submit and cause to be submitted altered invoices to the RUS in an effort to obtain payment for vendor services that were not eligible for reimbursement;

c.    divert RUS funds for purposes other than those authorized under the terms of the RUS broadband loan agreement; and

d.    provide false and misleading information to RUS officials and members of Sequelle's board of directors concerning the nature of defendant MENTORGEN's business relationship with defendant HEIDI C. LAUGHERY.

**D.    Misapplication and Diversion of RUS Loan Funds to Defendants Heidi C. Laughery and MentorGen**

29.    It was further a part of this scheme that in or about the spring or summer of 2003, defendant HEIDI C. LAUGHERY would and did enter into an agreement with defendant MENTORGEN where defendant MENTORGEN, in addition to being the primary contractor to Sequelle, would also become a partner in a new business venture that would later be known as "Sequelle Systems, LLC." ("Sequelle Systems"). The corporate mission of Sequelle Systems was to develop defendant MENTORGEN's telecommunications software so that it could be marketed to telecommunications companies nationwide.

30.    It was further part of the scheme that defendant HEIDI C. LAUGHERY and defendant MENTORGEN would and did agree that defendant HEIDI C. LAUGHERY would be the Chief Executive Officer of Sequelle Systems.

12

31.  It was further a part of this scheme that in the fall of 2003, defendant HEIDI C. LAUGHERY did cause Sequelle Systems to be incorporated in the state of Ohio.

32.  It was further a part of this scheme that defendant HEIDI C. LAUGHERY failed to disclose to the RUS the existence and business purpose of Sequelle Systems.

33.  It was further part of the scheme that in or about October 2003, defendant HEIDI C. LAUGHERY would and did discuss a plan with defendants JAMES LARRY HYMER, R. SCOTT TRUSLOW and MENTORGEN to use RUS funds for non-approved purposes, namely, payment of compensation for her services.

34.  It was further part of the scheme that defendants HEIDI C. LAUGHERY, JAMES LARRY HYMER, R. SCOTT TRUSLOW and MENTORGEN would and did agree to conceal and disguise the source of the payments to her by laundering a total of approximately $250,000, in separate transactions, using defendant MENTORGEN's, defendant Truscom's and defendant HEIDI C. LAUGHERY'S bank accounts.

35.  It was further part of the scheme that defendant HEIDI C. LAUGHERY, primarily for the purpose of receiving payment for herself and furthering Sequelle Systems's corporate mission, would and did cause more than $2.0 million of the $3.295 million in RUS loan funds to be diverted to defendant MENTORGEN, and more than $500,000 to defendant R. SCOTT TRUSLOW, who later transferred

approximately $250,000 of this amount to defendant HEIDI C. LAUGHERY.

### E.   Defendant Heidi C. Laughery's resignation from Sequelle and acceptance of Chief Executive Officer position at Defendant MentorGen.

36.   It was further part of the scheme that throughout the course of 2004, defendant HEIDI C. LAUGHERY would and did devote substantial time to the development of Sequelle Systems's national business interests rather than focus on the provisioning of broadband to rural West Virginia and Ohio communities, as she had agreed to do under the RUS contract.

37.   It was further part of the scheme that throughout the course of 2004, defendant HEIDI C. LAUGHERY would and did spend significant amounts of her time at defendant MENTORGEN's Columbus headquarters and traveling to other states for the purpose of furthering the mission of Sequelle Systems.

38.   It was further part of the scheme that, with significant portions of the RUS-funded project uncompleted, defendant resigned from Sequelle, recommended to Sequelle's board of directors that the company file for bankruptcy, and assumed the position as defendant MENTORGEN's Chief Executive Officer.

## USE OF THE MAILS IN FURTHERANCE OF THE SCHEME

39. On or about the respective dates shown below in Counts One through Five, at or near Parkersburg, Wood County, West Virginia, within the Southern District of West Virginia and elsewhere, for the purpose of executing the above-described scheme to defraud, defendant HEIDI C. LAUGHERY knowingly caused to be delivered by the United States Postal Service a matter or thing according to the direction thereon, that is, an envelope addressed to "Sequelle Communications Alliance, Inc., 1420 Seventh Street, Parkersburg, West Virginia, 26101" from the U.S. Department of Agriculture, Rural Utilities Service, containing, among other things, the items listed below:

| Count | Approximate Date | Contents |
|-------|------------------|----------|
| 1 | 9/2/2003 | RUS Financial Requirement Statement (#2) dated 8/28/2003 and RUS documents indicating funds in the amount of $428,028 have been approved. |
| 2 | 1/9/2004 | RUS Financial Requirement Statement (3#) dated 10/28/2003 and RUS documents indicating funds in the amount of $665,977 have been approved. |
| 3 | 1/15/2004 | RUS Financial Requirement Statement (#4) dated 1/15/2004 and RUS documents indicating funds in the amount of $598,745 have been approved. |
| 4 | 3/3/2004 | RUS Financial Requirement Statement (#5) dated 2/5/2004 and RUS documents indicating funds in the |

15

|   |   | amount of $495,233 have been approved. |
|---|---|---|
| 5 | 9/13/2004 | RUS Financial Requirement Statement (#6) dated 9/9/2004 and RUS documents indicating funds in the amount of $730,736 have been approved. |

In violation of Title 18, United States Code, Section 1341.

16

**COUNT SIX**
**(Theft from Organization Receiving Federal Funds)**

1.   The Grand Jury repeats and realleges paragraphs 1 through 38 of Count One of this Indictment as if fully set forth herein.

2.   During calendar year 2003, Sequelle was an organization receiving federal benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, insurance, guarantee, or other form of federal assistance, namely, funds from the United States Department of Agriculture, Rural Utilities Service.

3.   Defendant HEIDI C. LAUGHERY was the President and Chief Executive Officer of Sequelle and, as such, was an agent, that is, a director, officer, manager, and representative of Sequelle.

4.   During 2003, at or near Parkersburg, Wood County, West Virginia, within the Southern District of West Virginia, defendant HEIDI C. LAUGHERY did knowingly embezzle, steal, obtain by fraud and otherwise without authority convert to the use of a person other than the rightful owner, namely, the USDA, and did intentionally misapply property valued at more than $400,000 in federal funds that was under the care, custody, and control of Sequelle.

In violation of Title 18, United States Code, Section 666(a)(1)(A).

17

## COUNT SEVEN
### (Theft Regarding Organization Receiving Federal Funds)

1. The Grand Jury repeats and realleges paragraphs 1 through 38 of Count One of this Indictment as if fully set forth herein.

2. During calendar year 2004, Sequelle was an organization receiving federal benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, insurance, guarantee, or other form of federal assistance, namely, loans funds from the United States Department of Agriculture, Rural Utilities Service.

3. Defendant HEIDI C. LAUGHERY was the President and Chief Executive Officer of Sequelle and, as such, was an agent, that is, a director, officer, manager, and representative of Sequelle.

4. During 2004, at or near Parkersburg, Wood County, West Virginia, within the Southern District of West Virginia, defendant HEIDI C. LAUGHERY did knowingly embezzle, steal, obtain by fraud and otherwise without authority convert to the use of a person other than the rightful owner, namely, the USDA, and did intentionally misapply property valued at more than $2.0 million that was under the care, custody, and control of Sequelle.

In violation of Title 18, United States Code, Section 666(a)(1)(A).

18

## COUNT EIGHT
### (Money Laundering Conspiracy)

1.  The Grand Jury repeats and realleges paragraphs 1 through 38 of Count One of this Indictment as if fully set forth herein.

2.  From in or about 2003 and 2004, at or near Parkersburg, Wood County, West Virginia, within the Southern District of West Virginia, and elsewhere, defendants HEIDI C. LAUGHERY, JAMES LARRY HYMER, R. SCOTT TRUSLOW, and MENTORGEN, LLC, together with other persons known to the Grand Jury, knowingly conspired to commit offenses in violation of 18 U.S.C. § 1957(a), namely, to knowingly engage, and attempt to engage, in monetary transactions by, through or to a financial institution affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activities, that is: embezzlement of public monies in violation of 18 U.S.C. § 641; embezzlement from a program receiving Federal funds in violation of 18 U.S.C. § 666(a); mail fraud in violation of 18 U.S.C. § 1341; and wire fraud in violation of 18 U.S.C. § 1343.

### MANNER AND MEANS

3.  It was part of the conspiracy, that in the fall of 2003, defendants HEIDI C. LAUGHERY, JAMES LARRY HYMER, R. SCOTT TRUSLOW, and MENTORGEN, LLC, together with persons known to the Grand Jury, discussed a plan and agreed to transfer more than $10,000 of RUS

broadband loan monies from Sequelle's United Bank account to defendant HEIDI C. LAUGHERY, knowing that under the terms of the RUS broadband loan contract the RUS funds could not be used to pay defendant HEIDI C. LAUGHERY.

4.    It was further part of the conspiracy, that from in or about December 2003 through September 2004, defendants HEIDI C. LAUGHERY, JAMES LARRY HYMER, R. SCOTT TRUSLOW, and MENTORGEN, LLC, together with other persons known to the Grand Jury, did cause more than $240,000 of federal loan proceeds to be transferred from defendant R. SCOTT TRUSLOW's business bank account into defendant HEIDI C. LAUGHERY's personal bank account as follows:

> a.    on or about December 2, 2003, the sum of $14,908.55;
>
> b.    on or about January 23, 2004, the sum of $100,200;
>
> c.    on or about March 12, 2004, the sum of $79,200; and
>
> d.    on or about September 28, 2004, the sum of $50,000.

5.    While engaging in the aforesaid specified unlawful activity, defendants HEIDI C. LAUGHERY, JAMES LARRY HYMER, R. SCOTT TRUSLOW, and MENTORGEN, LLC, together with other persons known to the Grand Jury, did cause to be conducted and attempt to cause to be conducted the foregoing monetary transactions, all of which affected interstate commerce and involved the proceeds of the specified unlawful activities, and which defendants HEIDI C. LAUGHERY, JAMES LARRY HYMER, R. SCOTT TRUSLOW, and MENTORGEN, LLC, knew represented criminally derived property.

6.   Defendants HEIDI C. LAUGHERY, MENTORGEN, LLC, JAMES LARRY HYMER, and R. SCOTT TRUSLOW conducted the afore-referenced monetary transactions with the intent to engage in monetary transactions in criminally derived property of a value of greater than $10,000 derived from the specified unlawful activity.

In violation of Title 18, United States Code, Sections 1956(h) and 2(b).

## COUNT NINE
### (Engaging in an Illegal Monetary Transaction)

1.  The Grand Jury repeats and realleges paragraphs 1 through 38 of Count One of this Indictment as if fully set forth herein.

2.  On or about December 2, 2003, at or near Parkersburg, Wood County, West Virginia, within the Southern District of West Virginia and elsewhere, defendant HEIDI C. LAUGHERY knowingly engaged in and caused others to engage in a monetary transaction affecting interstate commerce in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activities, that is: embezzlement of public monies in violation of 18 U.S.C. § 641; embezzlement from a program receiving Federal funds in violation of 18 U.S.C. § 666(a); mail fraud in violation of 18 U.S.C. § 1341; and wire fraud in violation of 18 U.S.C. § 1343, by causing the transfer of $14,908.55 from defendant R. SCOTT TRUSLOW's Truscom, LLC, U.S. Bank account located in or near Columbus, Ohio to defendant HEIDI C. LAUGHERY'S Citizen's Bank accounts located in or near Marietta, Ohio.

3.  Defendant HEIDI C. LAUGHERY participated in the transfer of the proceeds of the aforesaid specified unlawful activities from Parkersburg, Wood County, West Virginia, within the Southern District of West Virginia, to Columbus and Marietta, Ohio, locations within the Southern District of Ohio.

22

4.    While engaging in and causing others to engage in the aforesaid monetary transactions, defendant HEIDI C. LAUGHERY knew that the property involved was criminally derived.

In violation of Title 18, United States Code, Sections 1957 and 2(b).

## COUNT TEN
### (Engaging in an Illegal Monetary Transaction)

1.  The Grand Jury repeats and realleges paragraphs 1 through 38 of Count One of this Indictment as if fully set forth herein.

2.  On or about January 23, 2004, at or near Parkersburg, Wood County, West Virginia, within the Southern District of West Virginia and elsewhere, defendant HEIDI C. LAUGHERY knowingly engaged in and caused others to engage in a monetary transaction affecting interstate commerce in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activities, that is: embezzlement of public monies in violation of 18 U.S.C. § 641; embezzlement from a program receiving Federal funds in violation of 18 U.S.C. § 666(a); mail fraud in violation of 18 U.S.C. § 1341; and wire fraud in violation of 18 U.S.C. § 1343, by causing the transfer of $100,200 from defendant R. SCOTT TRUSLOW's Truscom, LLC, U.S. Bank account located in or near Columbus, Ohio to defendant HEIDI C. LAUGHERY'S Citizen's Bank account located in or near Marietta, Ohio.

3.  Defendant HEIDI C. LAUGHERY participated in the transfer of the proceeds of the aforesaid specified unlawful activities from Parkersburg, Wood County, West Virginia, within the Southern District of West Virginia, to Columbus and Marietta, Ohio, locations within the Southern District of Ohio.

24

4.   While engaging in and causing others to engage in the aforesaid monetary transactions, defendant HEIDI C. LAUGHERY knew that the property involved was criminally derived.

In violation of Title 18, United States Code, Sections 1957 and 2(b).

## COUNT ELEVEN
### (Engaging in an Illegal Monetary Transaction)

1.   The Grand Jury repeats and realleges paragraphs 1 through 38 of Count One of this Indictment as if fully set forth herein.

2.   On or about March 12, 2004, at or near Parkersburg, Wood County, West Virginia, within the Southern District of West Virginia and elsewhere, defendant HEIDI C. LAUGHERY knowingly engaged in and caused others to engage in a monetary transaction affecting interstate commerce in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activities, that is: embezzlement of public monies in violation of 18 U.S.C. § 641; embezzlement from a program receiving Federal funds in violation of 18 U.S.C. § 666(a); mail fraud in violation of 18 U.S.C. § 1341; and wire fraud in violation of 18 U.S.C. § 1343, by causing the transfer of $79,200 from defendant R. SCOTT TRUSLOW's Truscom, LLC, U.S. Bank account located in or near Columbus, Ohio to defendant HEIDI C. LAUGHERY'S Citizen's Bank accounts located in or near Marietta, Ohio.

3.   Defendant HEIDI C. LAUGHERY participated in the transfer of the proceeds of the aforesaid specified unlawful activities from Parkersburg, Wood County, West Virginia, within the Southern District of West Virginia, to Columbus and Marietta, Ohio, locations within the Southern District of Ohio.

26

4.    While engaging in and causing others to engage in the aforesaid monetary transactions, defendant HEIDI C. LAUGHERY knew that the property involved was criminally derived.

In violation of Title 18, United States Code, Sections 1957 and 2(b).

27

## COUNT TWELVE
### (Engaging in an Illegal Monetary Transaction)

1. The Grand Jury repeats and realleges paragraphs 1 through 38 of Count One of this Indictment as if fully set forth herein.

2. On or about September 28, 2004, at or near Parkersburg, Wood County, West Virginia, within the Southern District of West Virginia and elsewhere, defendant HEIDI C. LAUGHERY knowingly engaged in and caused others to engage in a monetary transaction affecting interstate commerce in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activities, that is: embezzlement of public monies in violation of 18 U.S.C. § 641; embezzlement from a program receiving Federal funds in violation of 18 U.S.C. § 666(a); mail fraud in violation of 18 U.S.C. § 1341; and wire fraud in violation of 18 U.S.C. § 1343, by causing the transfer of $50,000 from defendant R. SCOTT TRUSLOW's Truscom, LLC, U.S. Bank account located in or near Columbus, Ohio to defendant HEIDI C. LAUGHERY'S Citizen's Bank account located in or near Marietta, Ohio.

3. Defendant HEIDI C. LAUGHERY participated in the transfer of the proceeds of the aforesaid specified unlawful activities from Parkersburg, Wood County, West Virginia, within the Southern District of West Virginia, to Columbus and Marietta, Ohio, locations within the Southern District of Ohio.

28

4.   While engaging in and causing others to engage in the aforesaid monetary transactions, defendant HEIDI C. LAUGHERY knew that the property involved was criminally derived.

In violation of Title 18, United States Code, Sections 1957 and 2(b).


CHARLES T. MILLER
United States Attorney


By: _____
L. ANNA FORBES
Assistant United States Attorney